USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __5/21/2018__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- X

JOAN PASINI,                              :
                                          :
                              Plaintiff,  :
                                          :          17-CV-1812 (VEC)
            -against-                     :
                                          :          ORDER
GODIVA CHOCOLATIER, INC. (d/b/a Godiva), :
                                          :
                              Defendant.  :

--------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       This case brings to mind the Southern adage: pigs get fat and hogs get slaughtered.

Plaintiff Joan Pasini ("Pasini"), a serial litigant,[1] opted-out of a class action settlement of Fair

and Accurate Credit Transactions Act, 15 U.S.C. § 1681c(g) ("FACTA") claims brought against

defendant Godiva Chocolatier, Inc. ("Godiva").  Pasini and the plaintiffs in the related class

action alleged that Godiva printed the first six digits and last four digits of its customers' credit

cards on transaction receipts.  *See* Mem. (Dkt. 32) at 1-2.  Pasini would have received

approximately $60-80 had she not opted out of the settlement.  Mem. at 2.  By opting-out, Pasini

was able to extract a settlement of $5,500 from Godiva.  Before the Court is her counsel's

motion for an award of a "reasonable attorney's fee[]," as the statute permits.  *See* 15 U.S.C. §

1681n(a)(3).  There is nothing reasonable about counsel's motion, however.  Although this case

involved no discovery, no motion practice (aside from this motion for fees), and no contested

hearings, counsel seeks to recover approximately $83,000 in fees and costs.[2]  Attorneys who take

---

[1]       See, e.g., *Pasini v. Pret A Manger (USA) Ltd.*, No. 17-CV-6395 (ALC) (S.D.N.Y. 2017) and *Pasini v. Fishs Eddy, LLC*, No. 16-CV-354 (PGG) (S.D.N.Y. 2016).

[2]       The parties initially crafted their settlement as a Rule 68 offer and acceptance of judgment.  *See* Dkt. 22 Ex. 1.  The Clerk of the Court never entered judgment, however, and, on April 6, 2018, the Court *sua sponte* raised

on consumer protection lawsuits are sometimes pursuing a public good—the individual damages are generally quite modest but there is a public interest in ensuring compliance with federal consumer protection laws. In this case, however, Plaintiff's attorneys used FACTA as a cudgel to attempt to extract an unreasonable fee. Counsel is entitled to recover reasonable fees, but this Court will not aid and abet extortion.

## DISCUSSION

The Court applies the lodestar method to determine what is a reasonable fee in a FACTA or FDCPA case. *See Samms v. Abrams*, 198 F. Supp. 3d 311, 318 (S.D.N.Y. 2016). The lodestar is the "number of hours worked multiplied by the prevailing hourly rates." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010). "The lodestar method is intended to 'produce[] an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.'"

---

whether the Court had subject-matter jurisdiction to enter a judgment on Plaintiff's underlying claim. In *Katz v. Donna Karan Co., LLC*, the Second Circuit held that including on a receipt additional digits of a credit card number beyond what is permitted under FACTA does not constitute a cognizable injury under Article III. 872 F.3d 114, 118 (2d Cir. 2017). In light of *Katz*, the Court doubts Plaintiff has Article III standing to assert her FACTA claim. Absent Article III standing, the Court would lack subject-matter jurisdiction to enter a judgment in Plaintiff's favor, as the parties' Rule 68 offer-and-acceptance required.

A telephonic conference with the Court was held on April 25, 2018, during which the parties agreed that they would settle the case on the following terms: (i) in exchange for consideration of $5,500, Plaintiff agreed to dismiss her underlying claim pursuant to Rule 41, (ii) Defendant agreed that it would not contest subject-matter jurisdiction in this Court or on appeal, (iii) the parties agreed this Court would decide Plaintiff's motion for an award of fees, and (iv) the agreement was without prejudice to Plaintiff's ability to argue on appeal that this Court had subject matter jurisdiction to enter judgment on her underlying FACTA claim. The parties' settlement and agreement to dismiss this case is memorialized in the transcript of the April 25, 2018 teleconference.

Notwithstanding the Court's concerns regarding subject-matter jurisdiction over Plaintiff's underlying FACTA claim, the Court has jurisdiction to determine a reasonable award of fees in connection with the parties' settlement and dismissal of this case. *See Chambers v. Time Warner, Inc.*, No. 00-CV-2839 (JSR), 2003 WL 1107790, at *2 (S.D.N.Y. 2003) ("As a general matter, the Supreme Court has held that motions for attorneys' fees raise collateral issues that 'a federal court may consider ... after an action is no longer pending.'" (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990))); *see also Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1055-56 (2d Cir. 1995) (district courts may consider fee applications in cases dismissed pursuant to Rule 41). Unlike the parties' Rule 68 offer-and-acceptance, a dismissal of this case (and subsequent determination of fees) does not require this Court to enter a judgment on Plaintiff's underlying FACTA claim. The parties' Rule 68 offer-and-acceptance is effectively withdrawn in light of the parties' settlement and agreement to dismiss this case.

*Ferrari v. U.S. Equities Corp.*, 661 F. App'x 47, 49 (2d Cir. 2016) (per curiam) (quoting *Perdue*, 559 U.S. at 551.) "The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Although the lodestar fee is "presumptively reasonable," *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. Of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)), the district court has discretion to adjust the lodestar fee in light of the facts of the case, *see Samms*, 198 F. Supp. 3d at 318. But the fact that a Plaintiff's monetary recovery is limited is not a basis to reduce a fee award as disproportionate— the fee-shifting provisions of consumer protection statutes like the FDCPA and FACTA are intended to "secure legal representation for plaintiffs whose . . . injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements." *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005).

1.      **Hourly rates**

The first step in calculating the lodestar amount is to determine the appropriate hourly rate. "A reasonable hourly rate must be considered within the context of the relevant legal 'community,' specifically, 'the district where the district court sits.'" *Tjartjalis v. Bureau*, CV 14-1412, 2016 WL 4223493, at *2 (E.D.N.Y. Aug. 9, 2016) (quoting *Arbor Hill*, 522 F.3d at 190); *see also Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (a reasonable hourly rate should be determined through a "'case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel,' an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district'" (quoting *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209

(2d Cir. 2005))). Plaintiff's counsel, Chant Yedalian, contends that his time should be valued at $650.00 per hour for the period since April 2017 and at $550.00 per hour for the period predating April 2017. *See* Declaration of Chant Yedalian ("Yedalian Decl.") (Dkt. 33) ¶¶ 39-40. Mr. Yedalian cites to several cases in the Central District of California in which courts have approved $500 or $550 as his hourly rate,[3] but no court in this District or the neighboring Eastern District of New York that has done so. Local counsel, Sameer Birring, states that his hourly rate has been $350.00 for the duration of this case. *See* Declaration of Sameer Birring ("Birring Decl.") (Dkt. 34) ¶ 4. Mr. Birring has cited to no court in any district which has approved his proposed rate.

Because neither party has cited to cases from this District approving fees in FACTA or FDCPA cases (FACTA is a sub-part of the FDCPA, *see* Pl.'s Mem. at 7), the Court has undertaken an independent survey. Other courts within this district have approved hourly rates in FDCPA cases of between $300 per hour and, at the upper end of the range, $550 per hour. *See Bean v. Allied Interstate, LLC*, No. 12-CV-9355 (LTS), 2013 WL 3717313, at *1 (S.D.N.Y. July 15, 2013) (approving $300.00 per hour in fees); *In re Arbitration between Okyere and Houslanger & Assocs., PLLC*, No. 12-CV-1463 (JPO)(GWG), 2015 WL 4366865, at *14 (S.D.N.Y. May 28, 2015) (approving rates of $350.00 per hour for a partner and $250.00 per hour for an associate); *Samms*, 198 F. Supp. 3d at 319 (approving $400.00 per hour in fees); *De La Paz v. Rubin & Rothman, LLC*, No. 11-CV-9625 (ER), 2013 WL 6184425, at *6 (S.D.N.Y. Nov. 25, 2013) (approving $550.00 per hour in fees and characterizing this as the "high end").

---

[3] At least one of those cases involved a class action settlement in which the plaintiff had a "clear sailing" agreement from the Defendant. *See In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014). Because clear sailing provisions ensure that the defendants will not take a position on the reasonableness of the fee requested by plaintiff's counsel, they make the resulting decision on the reasonableness of the fee less persuasive than if it had been a litigated issue.

In locating the appropriate rate for Mr. Yedalian along this spectrum, the Court has considered Mr. Yedalian's claimed experience and the complexity of the work involved in this case, as compared to the cited cases. Mr. Yedalian's experience is not a distinguishing factor because the practitioners in the cited cases were experienced attorneys as well. The Court views this as an exceedingly straightforward case—despite Mr. Yedalian's protestations that his work on this case was "nothing short of a full-court press." Mem. at 4. This case involved no motion practice, no discovery, no contested hearings, a single status conference, which lasted less than thirty minutes, two telephone conferences, which also lasted about 15 to 30 minutes each, and one mediation session. Because Plaintiff opted out of a class action and because Mr. Yedalian is "one of the most experienced FACTA attorneys in the nation," Mem. at 12, all of the legal ground underlying this lawsuit had already been well-tilled. Taking these factors into account, the Court finds a rate of $350.00 per hour to be appropriate (and generous) for Mr. Yedalian.[4] Mr. Birring acted as local counsel, and his participation appears to have been limited to attendance at hearings and conferences (which attendance appears to have been entirely duplicative) and ministerial tasks such as filing. The Court believes an hourly rate of $275.00 is appropriate in light of Mr. Birring's conclusory description of his experience and his role in this case.

---

[4] In setting an appropriate rate, the Court has not considered the tasks for which Mr. Yedalian billed his time. As is discussed *infra*, Mr. Yedalian appears to have acted as his own associate, paralegal, and secretary on this case. While the Court generally finds self-sufficiency to be laudable, Mr. Yedalian's approach yields inequitable results when someone else is paying the tab. For example, Mr. Yedalian seeks to charge $550.00 or $650.00 per hour for tasks such as reviewing a pro hac filing or coordinating with a video-conference vendor. Nonetheless, reducing Mr. Yedalian's rates to account for these tasks, while also reducing the amount of time billed for each task might unfairly "double-count." The Court believes it more appropriate to consider the work performed in connection with the amount of time billed, rather than the applicable rate.

## 2. Hours worked

Counsel for Plaintiff have submitted time-sheets reflecting 152:00 hours of time billed by Mr. Yedalian, and 10.6 hours of time billed by Mr. Birring. *See* Yedalian Decl. Ex. 3 at 9; Birring Decl. Ex. 6 at 5. The Court has reviewed the attorneys' time sheets and finds the hours billed by Mr. Yedalian to be so out of proportion to the tasks he purportedly undertook that the Court has to question the accuracy of the bills. Approximately 147 hours of Mr. Yedalian's time was spent on low-level work that could have been accomplished by an associate or paralegal; tasks any competent attorney (much less one with 15 years of experience practicing in an area of the law that is neither sophisticated nor intellectually challenging) could have accomplished far more quickly; travel to a single conference; and participation in mediation.

Reductions in the hours spent on each of these tasks are appropriate in calculating Mr. Yedalian's lodestar. No attorney with Mr. Yedalian's level of relevant experience would spend 10:40 hours of time, as he purportedly did, on basic tasks such as "review rules and begin preparing pro hac vice motion and order." Yedalian Decl. Ex. 3 at 3. And if they did, no sentient fee-paying client would pay for it. Similarly, Mr. Yedalian purportedly spent approximately 72:35 hours on tasks that would have taken a competent attorney (much less an attorney with 15 years of relevant experience) far less time. For example, Mr. Yedalian purportedly spent 5:10 hours drafting the complaint in this case, despite the fact that the complaint is almost entirely the duplicate of another complaint filed by Mr. Yedalian in a different action. An analysis performed by Defendant shows that 96.6% of the words in the complaint are the same and in the same order as a complaint filed by Mr. Yedalian in another case. *See* Opp'n (Dkt. 38) at 10. Also in the category of massively-inflated billing are entries for 9:25 hours spent drafting a joint pre-conference letter to this court. Anyone expecting an

opus would be mistaken: the joint letter was 5 pages and included basic information about jurisdiction, anticipated motions, and prospects for settlement. *See* Dkt. 8. The legal analysis is primarily background information recycled from Plaintiff's other filings. Mr. Yedalian purportedly spent 7:25 hours drafting discovery demands before the Court entered a case management plan. But, again, as Defendant points out, the discovery demands are also duplicates of demands used in a prior lawsuit. *See* Opp'n at 10.[5] Moreover, because the Court stayed discovery at the initial pre-trial conference, this work was entirely unnecessary. And then there is the 30:45 hours Mr. Yedalian purportedly spent on the present motion—billed over three straight days on which he apparently worked on nothing else.[6] The fee motion is a straightforward document, and one an attorney of Mr. Yedalian's experience has undoubtedly prepared numerous times previously. Mr. Yedalian also purportedly spent 22:45 hours of time traveling, even though he could have sent his local counsel to the conference and despite the well-established case law in this district that travel time for out-of-district lawyers is ordinarily not compensable. *See Makinen v. City of New York*, No. 11-CV-7535 (ALC)(AJP), 2016 WL 1451543, at *8 (S.D.N.Y. April 12, 2016). The Court will not credit Mr. Yedalian for time spent traveling to New York.

---

[5]     Plaintiff's response to Defendant's argument on this issue suggests that he was either trying to be obtuse or has limited legal skills. See Reply Mem. (Dkt. 40) at 8 (devoting a paragraph to explaining that the use of pronouns in discovery requests is reasonable), 9 (arguing that counsel saved time by drafting from a precedent set of discovery demands and noting "had they been started from scratch the total time spent would have increased").

[6]     Mr. Yedalian's reply declaration indicates that he spent a whopping 21:30 hours preparing Plaintiff's reply brief, bringing the total amount of time expended by counsel on this motion alone to approximately 52 hours. *See* Reply Mem. Ex. 1 (Reply Declaration of Chant Yedalian) at 2. It is inconceivable to the Court that preparation of a reply brief on these issues would consume 21 hours of an experienced lawyer's time. Similarly, Mr. Yedalian claims he spent 6:30 hours preparing a response to this Court's order regarding subject-matter jurisdiction over Plaintiff's underlying claim. *See* Dkt. 44 at 5. Mr. Yedalian's response appears to confuse the concepts of a cognizable interest in a settlement agreement for purposes of Article III injury and federal question jurisdiction.

In adjusting the lodestar amount, the Court has discretion to strike unreasonable entries or apply an across-the-board reduction in hours. *See Gesualdi v. Gen. Concrete, Inc.*, No. 11-CV-1866 (CBA)(JO), 2013 WL 1192967, at *10 (E.D.N.Y. Feb. 1, 2013) ("One acceptable method for 'trimming the fat' from a fee application in such circumstances, and one that consumes fewer judicial resources than a painstaking review of each time-entry, is for the court to impose an 'across-the-board percentage' cut of the total amount of time claimed." (quoting *In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 226, 237-38 (2d Cir. 1987))). Rather than expend further judicial resources on a line-by-line deconstruction of Mr. Yedalian's largely incredible time entries, the Court will apply an across-the-board reduction to Mr. Yedalian's remaining entries. Taking into account the egregiousness of Mr. Yedalian's time entries, the Court finds a 90% reduction to be appropriate. Assuming a lodestar rate of $350.00 per hour, and accounting for 152:10 hours of compensable time,[7] Mr. Yedalian is entitled to a fee of $5325.83.

Next are Mr. Birring's time entries. Mr. Birring billed a total of 10.6 hours to this case. The narratives provided by Mr. Birring are vague and it is unclear to the Court what efforts Mr. Birring undertook in this case that were not duplicative of the work performed by Mr. Yedalian. *See Guo v. Tommy's Sushi, Inc.*, No. 14-CV-3964 (PAE), 2016 WL 452319, at *6 (S.D.N.Y. Feb. 5, 2016) (reducing hours to account for duplicative timekeepers). The overwhelming majority of Mr. Birring's time entries relate to brief telephone calls and "communications" with Mr. Yedalian. Birring Decl. Ex. 6. It is not possible for the Court to say with any reasonable degree of confidence that this time is compensable. Courts in this district routinely apply an across-the-board reduction to account for vague time entries and duplicative attorney time. *See, e.g., Guo*, 2016 WL 452319 at *6; *Cortes v. New Creators, Inc.*, No. 15-CV-5680 (PAE), 2016

---

[7] This calculation includes time purportedly spent by Mr. Yedalian preparing Plaintiff's reply papers and his response to the Court's inquiry regarding subject-matter jurisdiction.

WL 3455383, at *9 (S.D.N.Y. June 20, 2016) (recognizing an across-the-board reduction as an acceptable remedy for block-billed and vague time entries and collecting supporting cases). Under the circumstances, the Court finds a 65% reduction in Mr. Birring's hours to be appropriate. Assuming a lodestar rate of $275.00 per hour, Mr. Birring is entitled to a fee of $1020.25.

**3.      Costs**

The fee-shifting provisions of FACTA and the FDCPA also entitle Plaintiff's counsel to reimbursement for their costs. 15 U.S.C. § 1681n(a)(3) (plaintiff may recover "the costs of the action"). The Court will not allow Plaintiff to recoup costs related to counsel's travel to New York for the initial status conference. As noted above, Plaintiff chose to hire out-of-district counsel to handle this matter. *See Ryan v. Allied Interstate, Inc.*, 882 F. Supp. 2d 628, 638 (S.D.N.Y. 2012) (denying an award of costs for travel-related expenses because plaintiff chose to hire out-of-state counsel).[8] Less travel-related expenses, Plaintiff is entitled to be reimbursed for $620.00 in costs.

## CONCLUSION

Plaintiff's motion for an award of fees and costs is GRANTED IN PART AND DENIED IN PART. The Court finds that Mr. Yedalian is entitled to an award of $5325.83 in fees. Mr. Birring is entitled to an award of $1020.25 in fees. Plaintiff is entitled to $620.00 in costs. The

---

[8]      Plaintiff relies heavily on her own declaration in which she asserts that she does "not know of any other attorney who has both (1) the extensive experience with FACTA litigation that Mr. Yedalian has, and (2) the willingness to prosecute an individual FACTA opt-out claim." *See* Decl. of Joan Pasini (Dkt. 35) ¶ 4. Ms. Pasini's lack of knowledge of such an attorney is not persuasive. There are tens of thousands of attorneys who practice law in New York City alone. The Court is confident that had she looked, she could have found an equally or more competent attorney to handle this rather mundane piece of litigation.

Clerk of the Court is directed to close the open motion at docket entry 31, dismiss Plaintiff's claims, and terminate this case.

**SO ORDERED.**

**Date:  May 21, 2018**
         **New York, NY**                    **VALERIE CAPRONI**
                                             **United States District Judge**